to Sheila Reyes-Orta et al. v. Highway and Transportation Authority et al. Thank you. Attorney Juan Moreno-Frontera, representing Ms. Reyes-Orta, I would like to reserve three minutes for your rebuttal. That's fine. Go ahead. Okay. This is a case that should be analyzed specifically within the facts that are described in our brief, and this is a political discrimination claim of a director of one of the departments of the Human Resources Office of the Puerto Rico Highway and Transportation Authority. She had been working there for more than 10 years and working for the government for more than 25 years. And specifically, we asked this court to analyze the environment in which Ms. Reyes-Orta worked when the new Progressive Party entered to govern in Puerto Rico in January 2009. As soon as in April of 2009, there was a newspaper article that was published in the major newspaper of Puerto Rico, El Nuevo Dia, which stated that the several salaries that were earned by trust employees in the authority, okay, and the source identified by El Nuevo Dia was a PDP, Puerto Rico Popular Democratic Party legislator, who gave that information to El Nuevo Dia. That same day, the record shows the executive director, Mr. Hernandez-Gregorat, who is one of the co-defendants in this case, called the human resources director at that time, Mr. Sanchez-Casanova, and told him, I want you to find out who did it and take action. Counsel, the district court, in a very exhaustive opinion, takes account of that incident and concludes that the record does not support an inference that that was directed at your client, and in fact points out that ultimately the investigation was inconclusive as to who was responsible for that. Yes, but the court How does that advance your position that that's an example of the kind of political discrimination that your client was experiencing? Because the court ignored evidence in the record from the deposition taken to Mr. Sanchez-Casanova, who was the human resources manager, and from the deposition of my client, who stated, one, Mr. Casanova admitted that he received pressure from Hernandez-Gregorat to take action and that he felt uncomfortable because Hernandez-Gregorat was asking for him to not follow the proper procedure in order to take action, and that Hernandez-Gregorat had told him it had to come out from your department and it had to come out from the directors because they have access to such sensitive information. Also, there is evidence in the record that states that Mr. Sanchez-Casanova told my client, you have to be careful at around that same time. You have to be careful because they want your head from the top. You have to be careful, and the issue was an issue linked to a political issue because the person that gave the information to the newspaper article was a PDP legislator, and what Hernandez-Gregorat was saying to the human resources manager was someone gave that information to the opposing party. In cases of this type, does it matter what motivated an employer's inquiry into what turned out to be a legitimate reason for termination? Yes, but because if there is evidence that they would not have taken that decision, but for the political issue. I'm not talking about the ultimate decision. I'm talking about the reason that occasioned the inquiry into the facts that lead to a termination. Does it make any difference what caused the look if the look on fair analysis discloses that there was an entirely apolitical reason for termination? I think if the record shows that there was a political motivation to begin that type of action, to begin that type of inquiry, then that, although you may allege that you have a legitimate cause, a legitimate reason, that legitimate reason is stained by the prior political motivation, and in this case, it is clear that from the start, from April 2009, there was a political motivation towards my client and towards the head of the human resources department's office. So your argument is that the law, what the law in this area says, is that whether there is a completely legitimate, apolitical, factually sustainable reason for discharge, that matters not at all if the reason the inquiry began in the first place was political. And the answer is yes? Yes, I think so, Your Honor. How does that square with Mount Healy? Because you can establish that if it was not bought for the political motivation, the action was not going to be taken, either the inquiry, Your Honor. So just so I get the account straight, if they looked into her for leaking for political reasons, That was the start. and in the course of that they discovered she embezzled, they can't fire her for embezzlement? Well, yes, they can fire her for embezzlement, yes. Why? Because they only discovered the embezzlement in the course of the leak investigation. But that's different because there is also evidence in the record, Your Honor, that what happened during the investigation of the leak is that the human resources director sent the investigation of the leak to the industrial relationship committee, which it should have not done because the regulations of the company did not authorize that. And the person in charge of that investigation of the leak met with my client and in that meeting told her, I know you're from the PDP government, we're going to discharge you, and gave in that meeting that was in August 2009, my client was dismissed, received the notification of intention of dismissal in December 2009. In August, he stated to her the reasons they were going to use to dismiss her. In August 2009, and that is in the record, and she wrote a letter to the co-defendant, the executive director, and I'm just going to go back telling him, look, I met during the investigation, I met with the investigator and the investigator told me this and told me this and told me this, I think this is political discrimination. And the agency did nothing. Counsel, the district court seemed to put a lot of store in the fact that it was during the PDP administration that two investigations were done of the promotion of your client to the position that she had in the highway department. And both of those investigations revealed significant irregularities in the way in which that promotion was carried out. And that, those irregularities in the district court's view explain, at least in substantial part, we can talk about the mixed motives aspect of this case, that those irregularities certainly provide a neutral, apolitical basis for dismissing her. Is there anything wrong with the district court's analysis of that factual assertion that there were all of these irregularities? What I will say is two issues. And I know this goes to Judge Hawking's question. Two issues. Those audits that the district court mentions are one from 2001 and the other from 2004. Yet the authority did nothing about them. Nothing until 2009, until after the leak of information. Well, a new administration comes into power. They're aware of a tradition common to both parties of disregarding some of the rules and regulations that apply to promotions and transfers, and they want to put a stop to that. And so they adopt a rule which says that in instances where there has been this disregard of the rules that apply to promotions and transfers, we're going to ferret that out, and if we find instances of that, we're going to terminate those employees. But you're making a distinction that I think in law you cannot do, because we're talking about the authority as the employer. You cannot distinguish between the authority as the employer on the PDP and the authority as the employer of the PMP. You cannot make that distinction in order to know if they discriminated against her because of their political affiliation. It is the authority, the employer, and the employer knew since 2001 and 2004 the alleged facts that arises the nullity of her position, and the authority didn't act upon it until after these facts happened. And also the human resources director that was there when the action was taken against my client in December 2009 was the same person that as an employee of the authority reviewed the documents when my client requested to be hired by the authority, reviewed the documents, verified it, and signed the certification that she had completed and verified all the documents and that they were there and that they were in accordance with what the authority required. Is the notion that it might be a case that the irregularity could be of such a kind that any person would acknowledge that that should be a firing offense in the past might not matter. But if I'm understanding you, the suggestion is the fact that there was no firing for these irregularities for all those years when considered in light of what the nature of the regularities are suggests that a reasonable jury could conclude it's not the kind of thing you automatically fire for. Therefore, they could draw an inference that the reason she actually was fired was the political reason. Sure. And we're also putting into contention the reality that she did not comply with the requirements. Because the same person that is human resources director on the day that she is fired and on the day that this alleged intention to terminate her is given to her, it was the same person that verified and certified that she complied with the requirements of all the documents. One thing that normally or often is proved or at least alleged by plaintiff, I guess it's summary judgment, there'd be evidence to support it, would be that there was some person who had done the same activity who was not dismissed. But with respect to... Well, you don't have any evidence like that. But we have evidence that the only people affected... But all of those people would be potentially in the same situation, which is the prior administration excused all that conduct. So it's not very probative. No, but because, Your Honor, the evidence shows that the audit of the personal files were conducted on all the files of the authority, all the files of the employees of the authority. Is there anyone that you can identify who the audit shows had a similar regularity who has not been fired? No, Your Honor, but we... So does every person who the audit identifies as having a regularity, were they all terminated? No, all were not terminated. Only 11 of them were received intention of termination and only a few of those 11 were in fact terminated. When the cases were filed, then they stopped, the intention, they didn't follow up with the intention of termination for some. Okay. Once they were sued. But... Pre-suit. Yeah, when they were sued. Pre-suit, they were all treated the same. Yeah, but the only affected were PDP employees. But was there any non-PDP person who was named in the audit? Who was audited? Yes. No, who was identified as having an irregularity. I don't have that information yet. Good afternoon, Your Honors. May I plead the Court? My name is Jasmine Gonzalez. I am the legal representative for the Puerto Rico Highways and Transportation Authority. Your Honor, we agree with the appellant that this case has to be seen in light of the facts, okay? We would like this Honorable Court to take a look specifically at the uncontested facts of this case. The plaintiff was transferred from the Industrial Commission in the year 2001. And there's some question about whether she actually supervised people or not. Yes, Your Honor. That's sort of the heart of it, isn't it? Yes, Your Honor. That's part of the audit. And that was right there in the file and no action was taken. No action was taken. Before the change in political affiliation of the government. I will not say that, Your Honor. I will clarify that we are dealing here with two agencies. The first one is the Industrial Commission that was the plaintiff's original agency. And the second one is the Puerto Rico Transportation Authority, okay? She moved from one to the other and received a promotion. That's correct, Your Honor. And there was some question at the time whether she had the requisite qualification. That's correct. But the first audit was made by the Industrial Commission, okay? The original agency. And what did they say? In that audit, it was discovered that the certification of duties of the plaintiff was incorrect, was erroneous. And the person that supervised... In other words, what she had told the new agency where she got the promotion in her description of her area of responsibility was inaccurate. That's correct, Your Honor. That issue... Did the authority know that? At that moment, no. When did the authority know that? Okay, that issue was referred to the legal division of the Industrial Commission, okay? Where in the year 2002, okay? So at that moment, year 2002, the Puerto Rico Highway and Transportation Authority does not have any knowledge about this. It was not until 2004 that the PR, excuse me, HTA conducted an audit and confirmed the information that was discovered on the first audit. And then they didn't do anything about it. At that moment, Your Honor, it was conducted an audit and... The answer is yes, right? At that moment, they didn't do nothing. They will do... They will refer to the legal division in order to verify the information and see what will be the corresponding course of action. They never terminate her. We know that. Even though they have that same information. Yes, Your Honor. But the thing is, on January 2009, the plaintiff was requested... And I'm setting out this timetable because it's important to know that in the first month of the PNP political party government in that tenure, she was asked to submit evidence as to her paperwork for the transfer, okay, in 2009. That was prior to the leak of information occurred on April 29, 2009. Was prior to that, the agency was taking action, was looking forward to know what happened with that transfer. So they already know. January 2009, okay? So then... How is that a good fact for you? It's a good fact, Your Honor, because this happens before the alleged discriminatory actions that they're told were conducted against the plaintiff. This was an ongoing investigation that took place before that, okay? So all the positions at the agency, that was all prior to the alleged leak of information occurred on April 29, 2009. So the thing is, Your Honor, this is a valid audit. This is a valid action taken by the agency based on information that has nothing to do with the plaintiff's political affiliation. But accepting all that you say about her employment history and the reason why she was appropriately vulnerable to dismissal because of all these irregularities that preceded her arrival at this position, what is it about this record that would prevent a reasonable jury from concluding, despite all of that history that you've documented, that the reason that she was hired was because she was a member of the wrong party? What would prevent a reasonable jury from concluding that? Your Honor, I think that plaintiffs have failed to establish the prima facie case because the record shows that plaintiff cannot assert that the secretary or either any other of the co-defendants here know her political affiliation. She has never been in a trust position within any of the agencies. She's just... So it's your position that your client should never even have been put in the position of having to assert a mount healthy defense, that the district court, to the extent that it even got into the mount healthy defense, should never have even gotten there. Is that your position? Your Honor, I think that the personal transaction performed with this plaintiff was correct. It was supported by valid audits, by a valid reason. And even though if we're going to argue that there was any political motivation we would deny, the mount healthy defense is available because no matter that point, the secretary or the agency will perform the same decision. The appointment was null, was invalid according to the parochial laws and regulations. But that's the thing I'm not quite getting. We know the same authority with that information is capable of deciding it's not worth firing for because they didn't fire her. Then the authority, after the new administration comes in with that same information, does fire her. So this is not a case in which we have any reason to think this is an offense that we always fire for because the authority didn't fire her for it some years before. So why couldn't a jury conclude what changed wasn't anything objective, it was a change in the attitude about her political affiliation? Well, Your Honor, I believe that the gap between one audit and the third one audit that was performed in the same agency, I think it was due to maybe, and I'm just speculating here, I don't know the facts for real, but it can happen that they were expecting her to provide some documentation in support of the investigation. I don't think, I don't think that... But on the record, we do have, I guess, it's just the question is what... Yes, Your Honor, but I don't think that the mere fact that they conducted an audit in 2004 and then in 2009 they tried to obtain more documents in regard to her, will be alone a simple allegation as to political discrimination or that the political affiliation will be the motivating factor for that. I have one other question. Is it conceivable that the transportation agency could have, when they found out the information, approached her and asked her to provide more information? And said, look, it turns out that you're not qualified for the job you have. But we have other positions that you are qualified for, they're lesser salary or whatever, and we're recommending that you be moved to that position. Was that ever offered her? Not less offered, no, Your Honor, not. Was there any other person in the transportation authority who had a similar record of having, let's say, inflated his or her qualifications, who was terminated as opposed to being offered a demotion? I cannot answer that question, Your Honor. Based on this record, the answer is no, isn't it? The answer is no, but the thing is that there are two persons. How many other people in this period of time were terminated at the transportation authority? There was like, I think there were 21, Your Honor. And how many of them were members of the PDP? I cannot make a true statement. Were any of them members of the NPF? From the PDP, I'm sure about two of them, which actually filed complaints in this court for political discrimination. The other cases were solved in the administrative proceeding. They didn't go to court. Okay, just apropos of that point, let me quote to you what the district court says on the political affiliation of individuals who were dismissed through this audit process. It says, according to plaintiffs, I guess on the basis of material in the record put in there by plaintiffs, according to plaintiffs, as a result of the personnel files audited during the summer of 2009, only PD employees were dismissed. That's what the district court says the record shows, as to the political affiliation of individuals dismissed in the summer of 2009. But then, I think somewhat troublingly, the district court adds, maybe so, but there was no evidence that only PDP employees were dismissed at the end of the audit. How is that compatible with the approach that the court is supposed to take to summary judgment to say, well, there's that evidence that only PD employees were dismissed, but there could have been more, and because they don't have more, this coincidence that all the employees dismissed were PDP employees doesn't count for purposes of summary judgment. How do you reconcile that footnote with the way in which the court is supposed to apply the summary judgment standard? Can I just add one thing, particularly when the burden is on the rebutting not healthy, the burden is on the government. Yes. I understand. First of all, I will clarify one of Judge Hoskin's questions that stand before Judge Lippis answer and pose the question, is that there are two personal transactions here. One is that she was transferred, and according to some resolutions that were at that moment, she was, in case that she was offered another position in lieu of the certification that she didn't qualify for the position of the Human Resources Programming Chief, she will have to return to her original agency. And that resolution, basically. And that was not offered her. That was not offered her. They went straight to termination. I know, Your Honor, but the thing is that according to that resolution, they cannot go back to their original agencies. So that's why that choice was not made in that moment, to answer your question. So why she was not offered another position? You know, if a police officer is a corporal and takes the examination for sergeant and is initially says that you passed the test, but there's some mistake or some application problem, the ordinary circumstance would be to offer the person to return to being a corporal. But you're telling us that was not offered here. I take it your position is they didn't have to do that. Exactly. And the thing is that there are some elements, quoting the audit, that make the certification fraudulent. Because she was the one who prepared the certification and submitted it to HRSA. She said she thought she supervised a particular secretary. When somebody talked to the secretary, the secretary thought she was not being supervised. That could be easily characterized as a mistake as opposed to fraud. Would you agree? Well, that was a mistake, but the thing is that she normally do that certification. Can you go? Yes, Your Honor. As to Judge Lippe's question, what I would like to say is that we understand that from the employees affected by these personal transactions, that to my best knowledge were almost 21 or more. Since this personnel was not exactly trust personnel, there were career personnel, the political affiliation was not necessarily an issue or known for the agency in order to take that action. It was a wide open audit and it was applied to all employees. Exactly 21 of them used the administrative proceeding to basically contest that decision. They never came to court. I think some of them settled. Some of them, I don't know what happened. They just go. But the thing is that exactly that we are aware for any political affiliation, there are two cases from the PDP. So, well, okay. Thank you. Good morning, Your Honors. My plea is to the Court. Michelle Camacho on behalf of Defendants at Police in their individual capacities. I don't want this argument to be over without stating regarding the individual capacities of defendants that they acted reasonably with what information they had in hand when they took office. And a reasonable officer will have concluded the same circumstances in this case, who have believed that the annulment of the termination of her position as a result of an external audit did not violate her protected copyright. Therefore, for defendants, it's our posit that are entitled to qualified immunity in this case in the event that you buy appellant's arguments. Based on defendants of the different investigations, 2001, 2004, which I would like to say during the 2004 investigation in the agency, she was not terminated. She was terminated because the investigation was ongoing. It never concluded. They asked her to provide the evidence. They say, yes, the certification is fraudulent. It's false information that you provided. It's not true. But I'm going to give you the opportunity to prove that you have the seven years experience for the Human Resources Department and the two years of supervisory experience that she needed to have for this position. The change of government came between 2008 and 2009, and the investigation was still ongoing. It was not concluded. Therefore, when Inez Gregorak took office in 2010, that was in 2009 in relation to 2008, that's when he found out that he has this piece of information and what I'm going to do with it. I have this person who is not qualified for this position. So the right thing to do was to terminate and to annul her position. So based on those findings and those different investigations and the audit that were conducted externally, first of all from the industrial commission and second externally from the agency, to the plaintiff's personal files is related and to the multiple irregularities that a reasonable officer would have concluded the same. Do you have any questions? Thank you. Attorney Frontera, just to clarify some things. Today is the first time that defendants have argued that 21 persons were affected. There is no evidence in the record as to that. The only evidence in the record is uncontradicted by defendants is what Judge Lippes read from the footnote of the court in the opinion of the court with respect to 11 people only being affected by the audit and all of them being PDP. That's uncontradicted in the record. That is not put in controversy by anyone. The other issue is that the investigation was ongoing, the investigation from 2004 ongoing. There is no evidence in the record that the investigation was ongoing after the audit was issued in 2004. There is absolutely no evidence in the record that the investigation was ongoing through 2004, 2005, 2006, 2007, 2008. Can I just back up on the significance of that 11 people all being from the same party? I think it's a point just about how the doctrine works that maybe you can help me with. Typically, the government has to come back and explain that politics didn't motivate it because we had a reason for doing this that was unrelated to the politics. And their evidence of that here is, well, we fired lots of people based on the audit. Having said that much, where does the burden fall? You say, well, that doesn't count because everybody on your list has the same political affiliation. They say back, but that's the universe of people that we know about who were terminated. So why isn't it on you or the plaintiff to show pretext of some kind? Why is it the government's obligation to identify some other person? What's missing? I just don't quite follow. You seem to be suggesting you don't have to show pretext, and I don't quite understand why you don't. Well, I think that either way, the record as it shows, it shows that we have provided enough evidence that the government has to show that the issue that got rolling the rock that culminated in the plaintiff termination was a political motivation. And the evidence is, the circumstantial evidence is what we have discussed, the investigation, the comments made by Hernandez-Gregoirat itself to the human resources manager, the comments made to Ms. Reyes-Horta by the investigator, signaling that she was a PDP and signaling in August the reason they were going to discharge her. And what's the significance of the fact that the audit, them starting to look into the audit, if I understood the government right, they contend that predates the conversation that you point to about the leak? The decision, the final determination as a result of the audit. I'm not talking about, I'm talking about the initiation of their interest in the audit and the new administration. They contend predates the conversation that you point to as the strongest evidence of their concern about the political affiliation. There is two audits here. One with respect to the transfer with the documents, and the other with respect to the resolution that authorized the transfer. There's two audits, two distinct audits. And all of them, the audit of the personal file commenced in the summer of 2009. Counsel, the interest in the audit, that all postdates the arrival of the new administration. Sure. Isn't that correct? Yes. And that's, in fact, it's within a month, is it not, that the, and there's a rule that's, there's an important rule that's adopted by the administration, is there not, which I gather says that if there are irregularities found in the promotion and transfers, it will lead to termination. Isn't that correct? Isn't there such a rule? Yes. When was that rule adopted? When the new, well, that was with respect to the resolution they enacted. Yeah. After they came, the PNP administration came into power. And does it predate the conversation about the leak where you say you have the strongest direct evidence of political discrimination? Yes. The rule was issued before that? Yes, yes, Your Honor. Well, how come then you say that it's obvious that what set the train in motion for firing on the basis of the audit was the concern about the leak in her political affiliation, as opposed to a neutral desire to look at whether people still in the employee of the authority had irregularities in their hiring? The results of the audit, Your Honor, that are in accordance with what happened between April and the intention of her termination. Well, that just brings me to my question about pretext, because what they say is the results of the audit can be explained, since it wasn't tainted in their view, since it predates that conversation. The results of the audit are the results of the audit, and it wasn't just her, it was everyone. Then why don't you have the obligation to show that it was pretextual? There's one other thing that I want to direct the Court as to that. We submitted a supplemental motion of supplementing our opposition, and that was accepted by the Court at docket 158. And we submitted a resolution issued by the authority revoking the prior resolution stating that it was wrong. And this is at docket 158. Thank you.